IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LORILLARD TOBACCO COMPANY,** a Delaware Corporation, | ) ) ) |
| Plaintiff, | ) ) Case No. 03 CV 4753 |
| v. | ) ) Judge Joan Gottschall ) |
| **ELSTON SELF SERVICE WHOLESALE GROCERIES, INC.,** an Illinois Corporation, and **MASHHOUR DUKUM,** a/k/a **MIKE DUKUM, IBRAHIM DUKUM,** and **DAVID DUKUM,** individuals, | ) Magistrate Judge ) Martin C. Ashman ) ) ) ) ) |
| Defendants. | ) ) |
| **ELSTON SELF SERVICE WHOLESALE GROCERIES, INC.,** an Illinois Corporation, | ) ) ) |
| Third-Party Plaintiffs, | ) ) |
| v. | ) ) |
| **CANSTAR (U.S.A.) INC.,** a Florida Corporation, and **CAM-KAT, INC.,** an Illinois Corporation, | ) ) ) ) |
| Third-Party Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lorillard Tobacco Company ("Plaintiff"), has sued Elston Self Service Wholesale Groceries and other defendants ("Defendants") for trademark infringement, counterfeiting, unfair competition, dilution, and deceptive trade practices. Before this Court is Plaintiff's petition for fees ("Plaintiff's Petition" or "Petition") under FED. R. CIV. P. 37

("Rule 37"). The Court rules on this Petition under Judge Joan Gottschall's referral of this case for discovery supervision pursuant to N.D. Ill. R. 72.1. For the reasons set forth below, this Court grants Plaintiff's Petition in the amount of $8,024.45 and denies the Petition as to the remaining balance.

## I. Background

Plaintiff requests fees under Rule 37 based on a series of events. The Court, therefore, describes the events related to each incident for which Plaintiff requests fees.

### A. Initial Production of Financial Information

In May 2005, Plaintiff served written discovery upon Defendants, asking for all of their financial records, including statements, cancelled checks, and deposit slips. (Pl.'s Supp. and Summ. Br. of Pl.'s Fee Pet. ("Pl.'s Supp.") 3.) Plaintiff also asked for records relating to real property interests held by Defendants. (*Id.*) More than a year later, on August 7, 2006, Defendants served their written objections. (*Id.*) During that year, Plaintiff had agreed to stay discovery because of an illness to one of Defendants' family members. (*Id.*) From October 2007 until December 2007, Plaintiff disputed the merit of Defendants' objections. (*Id.*) At some point during this period, as Defendants' counsel admitted at oral argument, Defendants "capitulated" on this issue and agreed to produce the personal financial information requested from Defendants Elston and Mashhour "Mike" Dukum ("Mike Dukum").

Defendants, however, did not produce Mike Dukum's personal financial information. As a result, Plaintiff filed a motion to compel production of that information on January 4, 2008.

(*Id.*) Three days thereafter, on January 7, 2008, Defendants produced an "Asset Chart," which apparently depicted the assets held by Mike Dukum. (*Id.*) Then, on January 14, 2008, Defendants produced "updated" financial statements with a cover letter dated January 5, 2008. (*Id.*) Plaintiff requests fees in the amount of $5,016.40, relating to these efforts. (*Id.* at 2.) These include fees for preparing and filing the motion to compel and the hearing on that motion. (*Id.*) "These fees do not include [Plaintiff's] fees incurred in preparing the original discovery requests, its fees incurred in exchanging letters under Rule 37 with . . . Defendants regarding those discovery requests in late 2007, or the time [Plaintiff] expended reviewing and analyzing these documents . . . ." (*Id.*)

## B. Further Issues Regarding the Asset Chart and Financial Information

One day after the Defendant produced the Asset Chart, January 15, 2008, Plaintiff deposed Mike Dukum. (Defs.' Supp. Br. in Opp'n to Pl.'s Pet. for Fees ("Defs.' Supp.") 3.) At this deposition, Mike Dukum testified that he had interests in several parcels of land he failed to disclose in his Asset Chart. (Defs.' Supp. 3; Pl.'s Supp. 4-5.) Plaintiff then requested, and Defendants agreed to produce, this new information. (Pl.'s Supp. 4-5; Defs.' Supp. 3.) On February 25, 2008, Defendants produced to Plaintiff "deeds and corporate documents for those [requested] respective properties" (Defs.' Supp. 3); but these documents were incomplete (Pl.'s Supp. 5.).

Plaintiff, in an effort to obtain all documents, filed its "renewed" motion to compel on March 4, 2008. (Pl.'s Supp. 5; Defs.' Supp. 3.) On March 11, 2008, the Court entered an Agreed Order that allowed Defendants to object to Plaintiff's motions by March 7, 2008, and, if it

proffered no objections, to produce the documents by March 21, 2008. (Dckt. 189.) Defendants then produced "all responsive documents in Mr. Dukum's possession" and Mike Dukum's personal bank statement on March 21, 2008. (Pl.'s Supp. 4-5; Defs.' Supp. 3.) Plaintiff claims that Defendants failed "to produce any of the personal financial records" as required by the March 11, 2008, Agreed Order. (Pl.'s Supp. 5.) Plaintiff requests $12,007.50 in attorneys' fees incurred "preparing and filing the March 2008 Motions to Compel ([Dckt.] . . . 181, 182), appearance before the Court on those Motions, and preparing and submitting the Agreed Order entered by the Court." (*Id.* at 4.) Plaintiff claims that "[t]hese fees do not include [its] review and analysis of Defendant's false Asset Chart, Depositions of Defendants relating to the false Asset Chart, [its] letters to Defendants demanding that they produce missing documents, or review of the materials, once Defendants finally produced them." (*Id.*)

## C. Further Production of Personal Bank Records

Sometime during March 2008, the scope of financial information sought expanded when Plaintiff requested financial records from an earlier time. (Defs.' Supp. 4.) Defendants agreed to produce this information, but obtaining these records apparently required Defendants to contact certain banks. (*Id.* at 4-5.) Nearly two months passed without Defendants, who contended the banks were slow in production, producing any records.

Plaintiff then, on May 29, 2008, filed a motion for sanctions for Defendants' failure to produce the bank records. (Dckt. 208.) According to Defendants, during April and May of 2008, they requested documents for the first time from Chase Bank and Fifth Third Bank. On June 2, 2008, subsequent to Plaintiff's motion, Defendants produced records from both banks, which

included "all accounts in [Mike Dukum's] name and those of his immediate family members." (*Id.* at 4.) Because Plaintiff did not believe Defendants' claim that they were having difficulties retrieving documents, this Court, on June 3, 2008, suggested that, if Plaintiff felt Defendants were withholding documents, it should subpoena Defendants' banks, which Plaintiff did. (Pl.'s Supp. 7.) It took Fifth Third Bank several weeks and a motion for rule to show cause to respond to the subpoena, allegedly because the subpoena had been placed on the desk of a recently discharged employee. (Oral Argument on July 20, 2009.)

For the time spent preparing for and participating in the events described in this section, Plaintiff seeks $6,279.20. (Pl.'s Supp. 6.) Plaintiff also seeks fees in the amount of $5,692.70 for the work it performed "preparing for and attending the June 20, 2008, hearing before the Court, continued work on the Subpoenas to Defendants' banks[,] . . . and initial review and analysis of Defendants' declarations." (*Id.* at 8.) Plaintiff did not include in these fees "the review of the tax returns, real estate records, and bank records that Defendants continued to produce after [Plaintiff's] Motion for Sanctions." (*Id.*)

### D. Ongoing Production

Defendants continue to produce the documents (*Id.* at 8-9), and stated at oral argument that they are given to Plaintiff as Defendants' counsel receives them. Plaintiff states that these documents relate to those requested in its two motions to compel, brought in January and March of 2008. (*Id.*) Plaintiff notes that each time new documents are produced, "[it] had to review them, identify the information still 'missing,' and demand the additionally-withheld information." (Pl.'s Supp. 8.) Plaintiff's requested amount, $21,141.60, "includes the fees for

preparing for its Reply Brief in support of its Motion for Sanctions and continued work on the subpoenas to Defendants' banks." (Pl.'s Supp. 9.) Plaintiff states that "these fees do not include the review of the documents that Defendants have continued to produce well after [Plaintiff's] Motion for Sanctions, much less its Motions to Compel." (*Id.*) These fees also exclude fees incurred as a result of deposing two Defendants (Mike Dukum and David Dukum), as well as those incurred as a result of Defendants previously canceling these depositions after uncovering further documents. (*Id.*) The fees also exclude "the regular review of financial records Mike Dukum produced on the morning of his November 2008 deposition." (*Id.*)

## II. Discussion

### A. Fees Under Rule 37

If a motion to compel under Rule 37(a) "is granted — or if the disclosure or requested discovery is provided after the motion was filed — the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(A). The court, however, cannot award these expenses where the movant failed to attempt in good faith to obtain disclosure without court intervention; where the non-disclosure was substantially justified; or where "other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A)(i)-(iii).

Since Defendants produced the documents in question after Plaintiff filed motions to compel and a motion for sanctions, the burden is on Defendants to prove that one of Rule 37's

exceptions applies. *See* FED. R. CIV. P. 37(a)(5)(A)(i)-(iii). Confusingly, Defendants articulate the legal standard at the end of their brief; but their main argument is that two of Rule 37's exceptions apply: Defendants' non-disclosure was substantially justified or the payment of Plaintiff's expenses would be unjust based on the circumstances. (Defs.' Supp. 10 (quoting FED. R. CIV. P. 37(a)(5)(A)(ii)-(iii)). Defendants do not argue that "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action[.]" FED. R. CIV. P. 37(a)(5)(A)(i).

The automatic award of fees under Rule 37 was adopted to "deter a party from pressing to a court hearing frivolous requests for or objections to discovery." FED. R. CIV. P. 37(a)(4) advisory committee's note on 1970 Amendments. The Supreme Court has stated that, in the context of Rule 37, "substantially justified" does not mean "'justified to a high degree,' but rather . . . [that] there is a 'genuine dispute,' or '[that] reasonable people could differ as to [the appropriateness of the contested action].'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citations omitted) (last alteration in original). The Sixth Circuit has developed a four-part test to determine whether a party was "substantially justified":

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

*Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 766 (6th Cir. 2005) (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)).

Although this test is persuasive authority, it is not binding. As a result, this Court is free to modify or reject some or all of its constituents. The primary modification this Court makes is to the third factor, which considers "whether the party was warned that failure to cooperate could lead to the sanction." If this factor is given any weight, it will be slight. Warnings do not play a major role in fee shifting under Rule 37, the primary purpose of which is to deter frivolous discovery motions. FED. R. CIV. P. 37(a)(4) advisory committee's note on 1970 Amendments; *Rickels v. City of South Bend, Indiana*, 33 F. 3d 785, 787 (7th Cir. 1994) ("Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) with regard to the merits of the claims.").

Further, the fee shifting under Rule 37 is automatic, and the court's issuance of a warning should not determine whether the non-moving party was "substantially justified" unless the court issued such a warning to the non-movant *well in advance of* the moving party's motion to compel. In that case, an unheeded warning would show the non-moving party knew and ignored the discovery request, which diminishes a claim that the non-moving party was substantially justified when it failed to comply with the moving party's request.

With that preliminary note behind, the Court applies the factors to this case. First, the majority of Defendants' conduct was a result of bad faith, willfulness, or fault. On every occasion except for those instances where Defendants attempted to obtain bank records, failure to produce documents in a timely manner was no one's fault but their own. Defendants produced Mike Dukum's personal financial information Plaintiff requested only after its motion to compel and,

even then, failed to produce all of the information in his possession, chalking this up to poor record-keeping. As to these records, this factor weighs in Plaintiff's favor.

With respect to the bank records, however, Defendants demonstrated to this Court that the banks from which they sought records were obdurate. Even Plaintiff had trouble obtaining records from the banks *after subpoenaing them*. Thus, because the banks, and not Defendants, were responsible for the delay in producing those records, the Court finds this factor weighs heavily in favor of Defendants as to the bank records.

Second, while Plaintiff has not pointed to any merit-based prejudice that it suffered as a result of Defendants' actions, fees were incurred. In this situation, where no real justification is given for Defendants' conduct, the Court gives this factor little, if any, weight.

Third, the Court did not issue a warning well before either motion to compel; therefore, that factor carries no weight. Finally, the Court also notes that it considered imposing *no* sanction prior to issuing this order.

In sum, the record evinces strong scents of noncompliance and evasive conduct. Plaintiff continually requested information and Defendants did not provide it, forcing Plaintiff to expend time and money filing motions. Only after Plaintiff filed motions did Defendants produce these documents. This is exactly the type of behavior contemplated by Rule 37's fee-shifting provision.

Defendants' counsel states a number of reasons for post-motion production: his client (Mike Dukum) did not know that he had to disclose assets he had placed in family members' names (Defs.' Supp. 3); his client is a poor record-keeper (Defs.' Supp. 4); Plaintiff broadened its initial request to include new information (Defs.' Supp. 4, 8); the banks were slow in supplying the information Defendants requested (Defs.' Supp. 4); his client's accountant employed a lawyer

who required a subpoena to retrieve information (Def.'s Supp. 4-5); Defendants (suspiciously) found documents only after their basement flooded. (Defs.' Supp. 5).

Viewed in the context of the entire case, nearly all of these excuses are inadequate. As noted before, Defendants did make a good faith effort to comply with the request for bank records, but had difficulty acquiring them from the bank. Therefore, Defendants were substantially justified in their failure to produce the documents until after Plaintiff's motion for sanctions. Aside from that instance, however, Defendants conduct can be described only as evasive and without substantial justification. Therefore, Rule 37(a)(5)(A)(iii) does not apply to Defendants except as to the motions prepared relating to the bank records.

Defendants also argue that requiring them to reimburse Plaintiff would be "unjust" under Rule 37(a)(5)(A)(iii). (Defs.' Supp. 10.) Circumstances may be unjust "where the prevailing party . . . acted unjustifiably." FED. R. CIV. P. 37(a)(4) advisory committee's note on 1970 Amendments.[1] Plaintiff did not act unjustifiably in subpoenaing Defendants' banks, which the Court suggested it do if it felt Defendants were withholding documents. This Court finds that Plaintiff did not act unjustifiably in its efforts to obtain further records from Defendants; therefore, Rule 37(a)(5)(A)(iii) does not apply.

---

[1] The Court observes that, although the two terms' meanings may overlap, "unjust circumstances" must necessarily differ from "substantial justification" lest the two provisions render one or the other surplusage. The primary difference between the two is that the "unjust circumstances" standard focuses on conduct of the moving party; the "substantial justification" standard is not so limited.

B.  **Attorneys' Fees**

1.  The Applicable Fees

Because this Court found that, under Rule 37, Defendants must pay for all Plaintiff's fees except those incurred as a result of the production of the bank documents, it must now determine the amount to be paid. Plaintiff has requested fees in the amount of $50,137.40.[2]

Before deciding the reasonableness of the fees requested, the Court must assess whether the fees requested relate to conduct the Court found fell under Rule 37. As to the first amount requested ($5,016.40), the Court finds that this amount reflects expenses incurred on matters compensable under Rule 37. In other words, those fees relate to the work done by Plaintiff in response to Defendants' failure to produce documents until after a motion to compel had been filed, and exclude the bank records that Plaintiff later sought.

The second amount requested ($12,007.50) reflects fees for "preparing and filing the March 2008 Motions to Compel[,] . . . appearance before the Court on those Motions, and preparing and submitting the Agreed Order entered by the Court." (Pl.'s Supp. 4.) Rule 37, however, requires "the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses *incurred in making the motion*, including attorney's fees." FED. R. CIV. P. 37(a)5)(A) (emphasis added.) The time spent "preparing and submitting the Agreed Order" is not an expense incurred in bringing the motion to compel–it is a descendent cost, and it is wholly separate from effort expended in bringing the motion itself. Therefore, it does not fall within Rule 37. The Court subtracts the fees

---

[2] The specific amounts requested for each particular set of events is detailed in section I.

incurred on this matter ($975.00) from the requested amount ($12,007.50). That leaves Plaintiff's claim for fees at $11,032.50.[3]

The three remaining amounts requested ($6,279.20, $5,692.70, and $21,141.60) encounter one serious problem: they pertain to fees this Court found fall within one of Rule 37's exceptions. Plaintiff's request for $6,279.20, for instance, included "fees for preparing and filing the Motion for Sanctions (Doc. No. 208) [*sic*], the initial appearance before the Court on this Motion, preparing and filing the Supplemental Brief requested by the Court at that initial hearing, and the initial work on the subpoenas to Defendants' banks." (Pl.'s Supp. 6.) That motion for sanctions, however, concerned the bank records this Court found Defendants could not retrieve because of the banks' obstinacy. Thus, Plaintiff cannot recover the aforementioned amount under Rule 37.

Plaintiff's request for $5,692.70 encounters the identical problem. That amount is sought for "preparing for and attending the June 20, 2008[,] hearing before the Court, continued work on the subpoenas to Defendants' banks[,] . . . and initial review and analysis of Defendants' declarations." (*Id.* at 8.) Because the Court found that these events fell within one of Rule 37's exceptions, Plaintiff is not entitled to the fee request of $5,5692.70.

Plaintiff's final request, for $21,141.60, also fails for this reason, and for one other. This amount "relate[s] to additional documents produced by Defendants responsive to the January and March motions to compel, as well as the May motion for sanctions." (*Id.* at 9.) Additionally, "this amount includes the fees for preparing for and its Reply Brief in support of its Motion for

---

[3] Although the Court generally will not scour the parties' papers to find facts the parties should have pointed out themselves, *see infra*, here there were only five entries relating to the time spent preparing and submitting the Agreed Order. The Court will not always be so generous.

Sanctions and continued work on the subpoenas to Defendants' banks." (*Id.*) Again, this request includes fees incurred in bringing the motion relating to Defendants' bank records, which this Court has found fell under a Rule 37 exception.

Beyond that problem, however, the request mixes fees incurred on Plaintiff's motion to compel (on which it is entitled to fees) and Plaintiff's motion for sanctions (on which it is not entitled to fees). The fact that these fees are clumped together prevents the Court from awarding these fees in any amount. The moving party, not the Court, is responsible for ferreting out and categorizing the relevant time spent on each matter. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) (stating that "[j]udges are not like pigs, hunting for truffles buried in" the record). Because the amount requested couples compensable and non-compensable conduct under Rule 37, the Court cannot discern, without acting as a ferret or a pig, how much of the amount requested constitutes "the movant's reasonable expenses incurred in making the motion." FED. R. CIV. P. 37(a)(5)(A). Therefore the Court denies Plaintiff's request for $21,141.60.[4]

### 2. The Reasonableness of Fees Compensable Under Rule 37

The Court now determines the reasonableness of Plaintiff's fees for the expenses deemed compensable under Rule 37. Plaintiff's billing rates for the three attorneys working on these motions are $473.00, $410.00, and $270.00. Given the simplicity of the motions on which

---

[4] The Court observes that Plaintiff could not have known which conduct would fall under Rule 37 until the Court ruled on that matter. The Court is not unsympathetic with Plaintiff's *potentially* uncertain position. That uncertainty, however, is tempered greatly here by the Court's request that Plaintiff separately identify each matter for which it claimed fees. Plaintiff did exactly the opposite with respect to its $21,141.60 request, clumping fees from one motion with another.

Plaintiff is entitled to fees, the Court, like the district judge, finds these fees unreasonably high. The motions to compel were four and five pages long, and requested information already sought; they did not involve complex legal or factual issues. Like the district judge, the Court finds that Plaintiff is entitled to fifty percent of the fees requested. Plaintiff properly requested fees for two sums, totaling $16,048.90 (the sum of $5,016.40 and $11,032.50). Since Plaintiff is entitled to fifty percent of this total, the Court awards Plaintiff $8,024.45 under Rule 37.

### III. Conclusion

For the foregoing reasons, this Court grants Plaintiff's Petition in the amount of $8,024.45 and denies the Petition as to the remaining balance.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: August 5, 2009.