UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LORILLARD TOBACCO COMPANY, a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) | Case No. 03 C 4753 |
| v. | ) ) | Judge Joan B. Gottschall |
| ELSTON SELF SERVICE WHOLESALE GROCERIES, INC., an Illinois corporation, and MASHHOUR DUKUM, a/k/a MIKE DUKUM, IBRAHIM DUKUM, and DAVID DUKUM, individuals, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION & ORDER**

In anticipation of trial, the parties submitted several motions *in limine*. The court addresses each motion in turn.

### I. LORILLARD TOBACCO COMPANY'S MOTIONS *IN LIMINE*

#### A. Plaintiff's Motion *In Limine* to Exclude References to Defendants' Purported Damages

The parties agree that the first five categories of evidence listed by Lorillard should be excluded, but disagree as to the sixth: namely, "[t]estimony regarding how this lawsuit may have affected Defendants' business." Mot. 2. Defendants claim that this evidence may be relevant to Lorillard's claim for punitive damages.

Lorillard's motion is denied with respect to this sixth category of evidence. The court intends to be vigilant in excluding irrelevant evidence, and encourages plaintiff to be similarly diligent in making appropriate objections. For instance, while defendants' financial condition may become relevant to punitive damages, the relevance of how any conduct by Lorillard, or this lawsuit, caused defendants' financial condition is unclear.

Defendants are further forewarned that by introducing such evidence (even assuming its relevance), they could open the door to evidence Lorillard says it possesses concerning defendants' allegedly fraudulent record-keeping practices. This motion is therefore granted in part, but denied as to the sixth category of evidence. Lorillard should object as appropriate if any such evidence is offered at trial.

### B. Plaintiff's Motion *In Limine* to Exclude Reference to the Size of Lorillard Tobacco Company

This motion is unopposed, and is granted.

### C. Plaintiff's Motion *In Limine* to Exclude Reference to Plaintiff's Law Firm and Rates

This motion is unopposed, and is granted.

### D. Plaintiff's Motion *In Limine* to Exclude References to Smoking and Health Litigation

This motion is unopposed, and is granted.

### E. Plaintiff's Motion *In Limine* to Exclude Reference to the Relative Size of Defendant Elston Self Service Wholesale Groceries, Inc.

Lorillard seeks to exclude evidence regarding the size of defendants' business relative to Lorillard while admitting that such evidence "may be unavoidably introduced at trial." Mot. 1. The motion is overly broad and vague, thereby compelling its denial. However, Lorillard may object if any evidence it seeks to exclude here is offered inappropriately at trial. Assuming appropriate objections, the court will prohibit defendants from, in Lorillard's words, "incit[ing] the Jury, garner[ing] sympathy, and encourag[ing] the Jury to make decisions based on something other than the actual merits." *Id.* 2.

### F. Plaintiff's Motion *In Limine* to Prohibit Defendants from Calling Cameron M. Nelson as a Witness at Trial

Lorillard seeks to prevent defendants from calling Lorillard's counsel in this case as a witness. The parties agree that Mr. Nelson possesses some, limited relevant non-privileged information, and defendants agree they will not call Mr. Nelson as long as Lorillard does not do so. Instead of simply accepting this agreement, which appears eminently sensible, Lorillard attacks defense counsel. In the midst of this attack, Lorillard states, "Defendants knew full well that Lorillard has no intention of calling Mr. Nelson as a witness during trial – **as indicated by the fact that he is not identified on Lorillard's witness list.**" Reply 2 (emphasis in original). Sweeping all this vituperation aside, the parties agree that Mr. Nelson will not be called by either side as a witness. This wholly unnecessary motion *in limine* is granted by agreement.

### G. Plaintiff's Motion *In Limine* to Exclude Evidence of the Religious Beliefs of Any Party or Witness

The court will permit one defendant, one time, to state that he is a Christian. The purpose of such testimony is not to impair or enhance credibility, but to make sure that no anti-Muslim prejudice infects the jury's deliberations in this case. Except for one instance by one testifying defendant, the motion *in limine* is granted.

Lorillard suggests that any religious concerns can be addressed in *voir dire*. If Lorillard suggests some reasonable way for the court to address this issue during *voir dire*, the court will reconsider granting this motion without qualification.

### H. Plaintiff's Motion *In Limine* to Exclude Evidence of Any Defendant's Personal Health Matters

Lorillard seeks to bar reference to the health problems of Ibrahim Dukum, who will be unable to attend the trial. In its reply, Lorillard proposes the following instruction as the sole mention of Ibrahim Dukum's health problems:

> Defendant Ibrahim Dukum is unable to attend trial due to a medical condition. All of the parties to this case agree that his absence is excusable and should not be held against him. You are not to consider his absence from trial in any way during your deliberations, and his absence should not affect your consideration of any of the evidence or issues in this case.

This language appears appropriate. The court will hear any objection from defendants to this language, and whether the language should be read to the jury as a stipulation or an instruction. The motion is granted.

### I. Plaintiff's Motion *In Limine* to Exclude Documents Bates-Labeled EW000001-EW000015 from Trial

To the extent this motion is opposed, an oral argument will be scheduled.

### J. Plaintiff's Motion *In Limine* to Deem the Audited Log of Defendant Elston's Purchase Invoice Line Items Reflecting Purchases of Newport Brand Cigarettes Admissible at Trial under F.R.E. 1006

This motion is related to the motion discussed in subsection (I), above. Ruling on this motion will await the oral argument.

## II. DEFENDANTS' MOTIONS *IN LIMINE*

### A. Motion *In Limine* to Bar Unsupported Allegations of Conspiracy

Defendants seek to bar certain allegations of a criminal or civil conspiracy involving Mustapha Ketchban. In its response, Lorillard offers a concession that appears to satisfy defendants. Resp. 3. Therefore, Lorillard is barred from eliciting evidence or argument that defendants were part of a criminal conspiracy to which Mr. Ketchban pled

guilty, and is similarly barred from eliciting evidence or argument that defendants are otherwise guilty of a civil or criminal conspiracy with Mr. Ketchban.  However, evidence of defendants' dealings with Mr. Ketchban may be relevant and are not addressed by this ruling.  Defendants' motion is granted in part.

### B. Motion *In Limine* to Bar Evidence of Settlement Negotiations

This motion is unopposed, and is granted.

### C. Motion *In Limine* to Bar Evidence of Frozen Assets

Defendants seek to bar evidence of this court's order freezing certain assets as a discovery sanction.  The evidence is not relevant to Lorillard's claims for fraud, as Lorillard's claims are not predicated on fraud committed after this suit began.  Rather, Lorillard wants to use the evidence, in its words, to show "exactly what you would expect to see from someone committing fraud and skimming un-booked cash from their [*sic*] business."  Resp. 2.  This is a perfect example of propensity evidence, which is inadmissible under Rule 404(b).  Therefore, Lorillard may not introduce evidence of the asset-freezing order or the facts giving rise to it in its case-in-chief.

However, Lorillard may inquire into specific instances of bad conduct on cross-examination of a witness.  Fed. R. Evid. 608(b).  The court emphasizes "inquire" because such impeachment may not proceed by use of extrinsic evidence.  To the extent that Lorillard has a basis for asserting that a defendant-witness (as opposed to his attorney, or a third party) was responsible for the sanctioned conduct, and to the extent that Lorillard also can show that the defendant-witness' conduct was probative of his character for truthfulness (as opposed to his character for forgetfulness or disorganization), it may cross-examine that defendant-witness on the specific acts giving rise to the asset-freezing order (but not, of course, the order itself, which is not an act by any defendant).

5

Defendants' motion is granted in part.

D.      **Motion *In Limine* to Bar Evidence of Discovery Sanctions**

Lorillard, in its response, and defendants, in their reply, treat this motion and the preceding motion jointly. The court finds that this motion addresses a similar issue: whether discovery sanctions are admissible evidence. The court therefore incorporates its ruling above. Defendants' motion is granted in part.

E.      **Motion *In Limine* to Bar Use at Trial of Certain Transcripts**

Defendants seek to bar admission of a deposition transcript from another case in which Lorillard was plaintiff, but to which these defendants were not parties. The deposition in question was not taken pursuant to reasonable notice and is therefore inadmissible for use against defendants. *See* Fed. R. Evid. 804(b)(1). This evidentiary dispute may be of no consequence, however, because the deponent, Mr. Hussain, is currently in Chicago. The parties are granted leave to depose Mr. Hussain at a mutually convenient time in the next two weeks.

The motion is granted.

F.      **Motion *In Limine* to Exclude Certain Opinion Evidence**

Defendants seek to bar three portions of the expert opinion offered by Lorillard's expert witness, Michael D. Pakter. As described within, the motion is granted with respect to the opinion expressed in section D.3.(b) of Mr. Pakter's report, and denied with respect to the opinions expressed in sections D.1 and D.3.(e).

   1.      Section D.1

Section D.1 summarizes several of Mr. Pakter's general criticisms of defendant Elston Wholesale's business. Defendants argue that, because Mr. Pakter does not explicitly tie those practices to the allegations in this case, his opinion regarding those

practices is irrelevant, and ought to be excluded. Alternatively, defendants argue that evidence of these practices is propensity evidence barred by Fed. R. Evid. 404(b). Lorillard responds that the general business practice deficiencies are relevant to show that defendant Elston Wholesale "has no way of assuring manufacturers that the invoices it issues are accurate." Resp. 3 (quoting Pakter Rep.).

The alleged absence of certain controls has the tendency to make it more likely that defendants could have committed the fraud alleged. Moreover, while the failure to implement these controls is indeed another bad act, and therefore not admissible to prove conformity therewith, the absence of controls is relevant to show that defendants had the opportunity to commit the fraud alleged, and therefore is admissible. *See* Fed. R. Evid. 404(b). Therefore, defendants' motion is denied with respect to Section D.1.

### 2. Section D.3.(b)

In section D.3.(b) of his report, Mr. Pakter categorizes certain transactions reflected in defendant Elston Wholesale's invoices as "improbable," based on the closeness of time of the transactions and their striking (hence, "improbable") similarity to each other. Defendants argue that Mr. Pakter's opinion is without foundation, irrelevant, speculative, and is inadmissible propensity evidence. Defendants' motion is granted with respect to section D.3.(b). These transactions concern brands of cigarettes not at issue here. Neither Lorillard nor Mr. Pakter have shown that the transactions are relevant to the alleged fraud here aside from showing defendants' propensity to commit fraud, which is a plainly impermissible use. *See id.*

### 3. Section D.3.(e)

Finally, in section D.3.(e) of his report, Mr. Pakter categorizes several of defendant Elston Wholesale's suppliers as "questionable." According to Mr. Pakter, a

supplier is questionable if it, *inter alia*, fails to list contact information on its invoices; fails to use invoice numbers, dates, and descriptions; changes its name frequently; or uses alter egos. Pakter maintains that defendants' dealings with these questionable suppliers are indicia of fraud.

Defendants object that Mr. Pakter is not qualified to render an opinion differentiating "questionable" suppliers from suppliers generally because Mr. Pakter has never worked in the cigarette industry. Defendants further argue that Mr. Pakter's categorization would not provide any expertise beyond the knowledge of the average juror since, defendants maintain, the transactions can be evaluated by the jury itself.

Defendants' motion is denied with respect to section D.3.(e). Mr. Pakter is a certified fraud examiner with decades' experience in fraud investigations. Defendants fail to explain how he would be unqualified to evaluate suppliers, particularly for indicia of fraud, based on this experience. Mr. Pakter can explain how defendants' suppliers were deficient, and defendants will have the opportunity to cross-examine Mr. Pakter on his methodology.

### G. Motion to Bar Evidence of Subsequent Remedial Measures

Defendants maintain that upgrades to their cash register system, made after the events alleged in this case, are subsequent remedial measures, evidence of which is inadmissible. *See* Fed. R. Evid. 407. Defendants initially characterize this upgrade as from a "non-computerized, non-integrated system" to "an improved computer system, into which all cigarette sales are now integrated." Mot. 1. Lorillard disputes this characterization, noting that defendants have possessed a computerized register system at all relevant times, that the parties deposed a technical support vendor regarding that computerized system, and that, in any case, the allegedly fraudulent transactions occurred

"off the books," or without the use of the since-upgraded register. Resp. 2-3. Lorillard further contends that defendants' subsequent measures were not remedial because they were not voluntary, but rather were demanded by the cigarette manufacturers. In their reply, defendants make no mention of whether the register at issue was computerized, and concede that they updated their register at the behest of Lorillard and other cigarette manufacturers.

Defendants have not cited any case law supporting their argument that measures demanded by Lorillard and other tobacco companies are "remedial" within the meaning of Fed. R. Evid. 407. Defendants also have failed to define what measures were taken. Defendants' motion is denied. However, the court reserves ruling on any further evidentiary objections related to the measures at issue, including objections related to relevance.

### H. Motion to Bar Evidence Relating to Cigarettes Other than Newports

Defendants seek to exclude evidence regarding a transaction occurring months before the events at issue in this action. According to defendants' motion, defendant Mike Dukum purchased certain Marlboro cigarettes in March 2003, three months before the transaction involving Newport cigarettes that gave rise to this litigation. Mike Dukum then sold those cigarettes to at least one retailer. The retailer then complained to Mike Dukum that those Marlboro cigarettes were "stale." Defendant maintains that this transaction was a prior bad act, and is inadmissible propensity evidence. *See* Fed. R. Evid. 404(b).

Lorillard argues that the Marlboros at issue were not stale, but counterfeit, pointing to subsequent criminal proceedings against the supplier of the Marlboro and Newport cigarettes for counterfeiting. Lorillard contends that evidence of the Marlboro

9

transaction would not be used to prove propensity, but to prove defendants' knowledge of (or at least willful blindness to) the counterfeit nature of Newport cigarettes later sold by defendants, an element of its case. *See Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989) (stating that willful blindness is standard in counterfeiting cases).

Defendants also argue that Lorillard's expert Michael Pakter's opinion that the Marlboro cigarettes were counterfeit is speculative. However, defendants insert this argument at the end of their motion without citation to or attachment of Mr. Pakter's opinion, without explaining how he is unqualified to reach such an opinion, and without explaining how his methods in reaching such an opinion are unreliable.

The court finds that the evidence of problems with cigarettes from a particular supplier is relevant to defendants' knowledge of the counterfeit nature of later-sold cigarettes from the same supplier. The court also finds that defendants have not adequately explained why Mr. Pakter's opinion should be excluded. Defendants' motion is denied.

### III. CONCLUSION

The parties' various motions *in limine* are granted in part and denied in part as detailed above.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: October 21, 2009